FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 06, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BRADLEY O.,<br><br>              Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY<br><br><br>              Defendant. | NO: 1:18-CV-3094-FVS<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 12, 18. This matter was submitted for consideration without oral argument. Plaintiff is represented by attorney D. James Tree. Defendant is represented by Special Assistant United States Attorney Sarah L. Martin. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 12, is denied and Defendant's Motion, ECF No. 18, is granted.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~1

# JURISDICTION

Plaintiff Bradley O.[1] (Plaintiff), filed for disability insurance benefits (DIB)

on December 10, 2014, and supplemental security income (SSI) on August 19, 2014,

alleging an onset date of January 1, 2012 in both applications.  Tr. 277-89.  Benefits

were denied initially, Tr. 196-202, and upon reconsideration, Tr. 214-26.  Plaintiff

appeared at a hearing before an administrative law judge (ALJ) on March 1, 2017.

Tr. 91-115.  On May 17, 2017, the ALJ issued an unfavorable decision, Tr.16-29,

and on April 6, 2018, the Appeals Council denied review.  Tr. 1-5.  The matter is

now before this Court pursuant to 42 U.S.C. § 405(g); 1383(c)(3).

# BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts,

the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are

therefore only summarized here.

Plaintiff was 51 years old at the time of the hearing.  Tr. 93.  He has a GED.

Tr. 93.  He testified that he last worked in 2014 as a forklift driver for a fruit

company.  Tr. 93-94.  He stopped working because he had difficulty remembering

---

[1]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first

name and last initial, and, subsequently, Plaintiff's first name only, throughout this

decision.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~2

things and could not do the job.  Tr. 93-94.  His back and knee pain also bothered him all day long.  Tr. 94.

He testified he cannot work because his low back "goes out of place" when he tries to lift anything and it hurts all the time.  Tr. 96.  He has to lie down during the day sometimes to relieve his back pain.  Tr. 105.  However, his physical problems are only a small part of why he cannot work.  Tr. 98.  He testified that the main thing preventing him from work is his mental health issues, including anxiety and difficulty being in public and talking to people.  Tr. 98.  His memory has gotten worse recently and is really bad now.  Tr. 98-99.  He also has a hard time concentrating due to ADD or ADHD.  Tr. 99.  He has racing thoughts all of the time.  Tr. 99.  He has difficulty learning tasks due to his ADHD.  Tr. 100.  He has a lot of issues socializing with people.  Tr. 100.  He gets nervous and does not like to be in a public setting.  Tr. 100.  He has some anger and irritability issues when he is around other people.  Tr. 100.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and

citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national

economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

### ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity since January 1, 2012, the alleged onset date. Tr. 18. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the spine; status post arthroscopic surgery on the right knee; depressive disorder; and anxiety disorder. Tr. 18. At step three, the ALJ found that Plaintiff does not

have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 19.

The ALJ then found that Plaintiff has the residual functional capacity to perform light work with the following additional limitations:

> The claimant can lift and/or carry twenty pounds occasionally and ten pounds frequently, and can stand and/or walk, and sit, for about six hours in an eight-hour day with usual breaks.  He can operate foot and hand controls without limitation other than as described by the lift and carry limitations.  The claimant can frequently kneel, crouch, crawl, and climb ramps and stairs, and can occasionally stoop and climb ladders, ropes, or scaffolds.  The claimant can understand, remember, and carry out simple instructions, can make judgments commensurate with the functions of unskilled work, i.e. work which needs little or no judgment to do simple duties and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed.  The claimant can respond appropriately to supervision, but should not be required to work in close coordination with coworkers or where teamwork is required.  He can deal with occasional changes in the work environment, and can do work that requires no contact with the general public to perform the work tasks.

Tr. 21-22.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  Tr. 28.  At step five, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform such as product assembler, packing line worker, and housekeeping cleaner.  Tr. 28-29.  Thus, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from January 1, 2012, through the date of the decision.  Tr. 29.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~8

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II and supplemental security income under Title XVI of the Social Security Act. ECF No. 12. Plaintiff raises the following issues for review:

1.      Whether the ALJ erred by failing to consider a prior period of disability;

2.      Whether the ALJ properly evaluated Plaintiff's symptom claims; and

3.      Whether the ALJ properly considered the medical opinion evidence. ECF No. 12 at 7-24.

**DISCUSSION**

**A.      Prior Period of Disability**

Plaintiff contends the ALJ erred by failing to consider his earlier period of disability. ECF No. 12 at 4-7. In December 2008, Plaintiff filed applications for Title II and Title XVI benefits, alleging disability beginning November 18, 2008. Tr. 121. After the claims were denied initially and on reconsideration, and after a hearing before an ALJ, on November 12, 2010, the ALJ issued a decision finding Plaintiff was disabled for the period from November 18, 2008 through September 8,

2010.[2]  Tr. 121-31.  The ALJ also found that beginning on September 9, 2010, Plaintiff experienced medical improvement, had the residual functional capacity to perform medium work, was capable of performing past relevant work, and that Plaintiff's disability ended on September 9, 2010.  Tr. 129-30.

"The principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings."  *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1998) (citing *Lyle v. Sec'y of Health and Human Servs.*, 700 F.2d 566, 568 n.2 (9th Cir. 1983)).  Social Security Acquiescence Ruling 97-4(9) follows *Chavez* and explains that it "applies only to cases involving a subsequent disability claim with an unadjudicated period arising under the same title of the [Social Security] Act as a prior claim on which there has been a final decision by an ALJ or the Appeals Council that the claimant is not disabled."  Acquiescence Ruling 97-4(9), 1997 WL 742758.  A previous final determination of nondisability creates a presumption of continuing nondisability with respect to any subsequent unadjudicated period of alleged disability.  *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995); AR 97-4(9).

---

[2] The ALJ also reopened and revised determinations regarding earlier applications filed on July 31, 2007, and December 9, 2007, in order to conform them to the findings in the 2010 decision.  Tr. 121.

AR 97-4(9) directs adjudicators to follow a two-step inquiry in considering a prior nondisability decision. First, adjudicators must apply the presumption of continuing nondisability. *Id.* A claimant "may rebut this presumption by showing a 'changed circumstance' affecting the issue of disability with respect to the unadjudicated period." *Id.* Second, if the claimant rebuts the presumption, adjudicators must give effect to certain findings in the final Appeals Council or ALJ decision on the prior claim while adjudicating the subsequent claim, including findings regarding a claimant's RFC, education, or work experience. *Id.* Such findings must be adopted in determining whether the claimant is disabled for the unadjudicated period "unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding." *Id.*

In the prior decision, Plaintiff was awarded benefits for a closed period of disability from November 18, 2008, to September 8, 2010, primarily due to his mental health conditions in combination with his knee condition. Tr. 126-29. The ALJ found that Plaintiff had experienced medical improvement as of September 9, 2010, because he had returned to medium work. Tr. 129. Under *Chavez*, the first ALJ's finding that Plaintiff could work beginning September 9, 2010, created a presumption that Plaintiff continued to be able to work after that date.

Plaintiff contends the ALJ in this matter did not give "appropriate consideration to the prior findings, as was required,"[3] and that the ALJ's error "was clearly harmful because, had the ALJ adopted the prior RFC findings, [Plaintiff] would have been reapproved for disability." ECF No. 12 at 8. Plaintiff's argument and additional assertions regarding unsuccessful work attempts imply the argument that the prior nondisability RFC and finding should be changed or revoked, and the disability RFC should be revived and credited. ECF No. 12 at 7. However, Plaintiff cites no authority for such a conclusion and neither *Chavez* nor AR 97-4(9) provides any basis for that result.

In fact, the principles of res judicata announced in *Chavez* do not create a rebuttable presumption of disability regarding a prior finding of disability. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008); *see also Withey v. Astrue*, No. CV-10-1972-PHX-GMS, 2011 WL 3648273, at *7 (D. Ariz. Aug. 19, 2011). The prior ALJ decision creates a presumption of nondisability, not a

---

[3] The ALJ noted that the prior decision is administratively final as to the issue of disability for that period covered by that decision. Tr. 16; *see Taylor v. Heckler*, 765 F.2d 872, 876 (9th Cir. 1985) ( "The principal of res judicata applies to findings and decisions on the merits which become final as a result of a claimant's failure to seek administrative review after notice of an adverse decision.").

presumption of disability, *see* AR 97-4(9), and thus does not support Plaintiff's current claim.

The ALJ reviewed over 500 pages of new medical records for the period from January 2011 to November 2015, Tr. 405-960, and found a more restrictive RFC than the RFC for medium work found in the prior claim. Tr. 129. Even if the ALJ erred by not specifically addressing res judicata or AR 97-4(9), any error would be harmless. *See Elena I. S. v. Comm'r of Soc. Sec. Admin.*, No. 3:18-CV-01214-JR, 2019 WL 3219332, at *4-5 (D. Or. July 17, 2019) (affirming ALJ decision despite failure to specifically discuss prior decision granting closed period of disability because the ALJ discussed over 300 pages of additional records); *Ward v. Colvin*, No. C13-5356BHS, 2014 WL 2197862, at *4 (W.D. Wash. May 27, 2014) (determining potential error was harmless when ALJ did not address prior closed period of disability because the ALJ found a more restrictive RFC in the current claim); *Diaz v. Astrue*, No. 1:09-CV-0927 SKO, 2010 WL 3432262, at *6 (E.D. Cal. August 31, 2010) (finding harmless error when ALJ improperly concluded there were no changed circumstances rebutting the presumption of continuing nondisability because the ALJ "thoroughly reviewed the medical evidence and imposed additional RFC limitations . . . . Even if the ALJ had correctly found that Plaintiff's changed circumstances rebutted the presumption of continuing non-disability, the ALJ would have had to proceed with a review of the medical evidence, as he did despite his error."); *Belcher v. Astrue*, No. 1:09CV01234 DLB,

2010 WL 2353524, at *8 (E.D. Cal. June 9, 2010) (finding harmless error when ALJ failed to cite changed circumstances and otherwise erred in applying *Chavez* because the ALJ thoroughly reviewed the medical evidence, found new severe impairments and imposed additional limitations); *see also Trofimuk v. Comm'r of Soc. Sec. Admin.*, No. 2:12-cv-2482-KJN, 2014 WL 794343, at *5 (E.D. Cal. Feb. 27, 2014) (concluding that when the ALJ relies entirely on medical evaluations conducted after a prior adjudication, the ALJ is not required to give the findings from the prior adjudication preclusive effect).

## B.    Symptom Claims

Plaintiff contends the ALJ improperly rejected his symptom claims. ECF No. 12 at 8-15. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834; *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds that the ALJ provided specific, clear, and convincing reasons for finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms less than fully persuasive. Tr. 22.

First, the ALJ found Plaintiff's statements to treating providers are inconsistent with his allegations of extremely limiting physical conditions. Tr. 23. The ALJ evaluates a claimant's statements for their consistency, both internally and with other information in the case record. S.S.R. 16-3p. In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability review process with any other existing statements or conduct made under other circumstances. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The ALJ noted that in October 2014, Plaintiff told a mental health provider that he had some dental issues but had no other medical problems. Tr. 23, 405. In March 2015, he told Greg D. Sawyer, M.D., Ph.D., that he is unable to work primarily due to mental health issues. Tr. 23, 536. The ALJ found this statement inconsistent with his allegations of constant pain and being unable to lift anything, and with allegations of extreme problems with his back and constant pain. Tr. 23. One month after seeing Dr. Sawyer, his chief complaint to a mental health provider was back pain and difficulty sleeping due to back pain. Tr. 23, 543. The ALJ observed that Plaintiff's description of his mental health symptoms was inconsistent ("variability in terms of accuracy, validity, and reliability," Tr. 536), and that Dr. Sawyer noted Plaintiff presented as rather sophisticated, appeared to be seeking a psychiatric diagnosis, and that he appeared to overstate his symptoms. Tr. 23, 539, 541.

The ALJ further found that the record reflects Plaintiff feels like he could work but chooses not to. Tr. 23. In April 2015, Plaintiff told his counselor that he was not looking for work because, "I'm trying to get on SSI and if I get a job, they throw away my application." Tr. 757. He was going to stay in his living situation with "a hoarder" with whom he had conflict "for however long it takes to get on SSI." Tr. 757. In July 2015, he said he was not looking for work even though "if I had somewhere to live and money, I'd be fine." Tr. 740. In December 2015, a mental health provider noted, "He is still not planning on leaving his living situation until he is approved for disability or finds a job. It is unclear if he has started looking for a job since he told his therapist he did not plan on finding one." Tr. 707. The ALJ noted Plaintiff did not tell these treating mental health providers that he was unable to work due to his symptoms, and reasonably found these statements are inconsistent with Plaintiff's allegations that he cannot work because of his physical and mental health conditions. Tr. 23. This is a clear and convincing reason supported by substantial evidence.

Second, the ALJ found Plaintiff's mental health symptoms are related to situational stressors such as relationship and housing issues. Tr. 23. If a claimant suffers from limitations that result from situational stressors rather than a medical impairment, an ALJ may properly consider this fact in discounting Plaintiff's symptom claims. *See Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998) (finding ALJ properly rejected claimant's testimony in part based on claimant's motivation

due to her stressful living situation); *Chesler v. Colvin*, 649 F. App'x 631, 632 (9th Cir. 2016) (concluding symptom testimony was properly rejected in part because "the record support[ed] the ALJ's conclusion that [plaintiff's] mental health symptoms were situational"); *see also Kimberlee L. v. Comm'r of Soc. Sec. Admin.*, No. 2:18-CV-00236-MKD, 2019 WL 2251824, at *9 (E.D. Wash. May 9, 2019), *report and recommendation adopted sub nom. Kimberlee Anne L. v. Comm'r of Soc. Sec. Admin.*, No. 2:18-CV-236-RMP, 2019 WL 2250279 (E.D. Wash. May 24, 2019) (affirming ALJ's finding that many of claimant's most symptomatic periods were due to situational stressors as a reasonable interpretation of the record and thus a valid reason to discount the alleged severity of symptoms); *Brendan J. G. v. Comm'r of Soc. Sec. Admin.*, No. 6:17-CV-742-SI, 2018 WL 3090200, at *7 (D. Or. June 20, 2018) (determining "situational stressors" was a valid reason for discounting claimant's testimony when evidence supported the finding); *Rys v. Berryhill*, No. CV 16-8391-JPR, 2018 WL 507207, at *15 (C.D. Cal. Jan. 19, 2018) (affirming ALJ's finding that claimant's depression was situational based on evidence in the medical record); *Menchaca v. Comm'r, of Soc. Sec. Admin.*, No. 6:15–cv–01470–HZ, 2016 WL 8677320, at *7 (D. Or. Oct. 7, 2016) (finding symptoms caused by "situational stressors" is legitimate reason to discount credibility); *Oraivej v. Colvin*, No. C15-630-JPD, 2015 WL 10713977, at *6 (W.D. Wash. Oct. 5, 2015) (affirming ALJ's finding that situational stressors increased the claimant's symptoms where her providers

noted the connection between situational stressors and her symptom flares); *Wright v. Colvin*, No. 13-CV-3068-TOR, 2014 WL 3729142, at *5 (E.D. Wash. July 25, 2014) (determining the ALJ properly considered situational stressors where the finding was supported by the medical evidence and the claimant's own testimony).

The ALJ cited a December 2016 mental health treatment record as one example indicating Plaintiff's symptoms are impacted by situational stressors. Tr. 23. Plaintiff reporting ongoing symptoms of depression and irritability but stated "his recent depressive s/sx [signs and symptoms] are primarily situationally induced by 'same stuff at home.'" Tr. 629. Plaintiff recognized that his symptoms came and went "depending on things like finances, emotions, and [his] relationship [with his girlfriend]." Tr. 629. The provider noted that, "Beside these situational stressors, he continues to feel his main ongoing anxiety(s) is related to being in crowded or social situations." Tr. 629.

Plaintiff argues that "exacerbations of symptoms from challenges encountered in [Plaintiff's] daily life is not inconsistent with disability" and that Plaintiff's "poor capacity to cope with everyday stressors is actually indicative of his limited ability to cope with the stress of work." ECF No. 12 at 10-11. There may be situations where these statements are correct, but here, the record supports the ALJ's interpretation. *See also e.g.*, Tr. 707 ("he has noted much of his anxiety and irritability are due to his living situation and financial troubles"), 740 ("He reported several situational stressors . . .").

Plaintiff further contends the record cited by the ALJ does not support the finding of situational stressors because it also states Plaintiff was at his "usual baseline of generally dysthymic and somewhat irritable along [with] downcast presentation and poor eye contact." ECF NO. 12 at 11 (citing Tr. 632). However, the ALJ found that "periods of heightened or exacerbated anxiety symptoms" were due to situational stressors and "are inconsistent with the claimant's allegations regarding the existence of severe symptoms throughout the relevant period. Such symptoms . . . are not indicative of the claimant's baseline functioning." Tr. 23. The ALJ did not find that Plaintiff has zero symptoms without situational stressors, but that the intensify, persistence, and limiting effects are impacted by situational stressors, which is supported by the record. Furthermore, the RFC finding accounts for the "baseline" symptoms identified by Plaintiff by including mental limitations including no close contact or teamwork with coworkers and no contact with the public. Tr. 22.

Plaintiff additionally raises an issue regarding the ALJ's step three finding because "the finding of an exacerbation of symptoms from stressors indicates a meeting of the requirements under paragraph C." ECF No. 12 at 12-13. This is insufficient to challenge the step three finding. "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

Furthermore, the ALJ's step three finding is not boilerplate, as alleged by Plaintiff. Tr. 19-21.

Third, the ALJ found that minimal and mild physical exam findings are inconsistent with Plaintiff's allegations of severely limiting pain. Tr. 23. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857. Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch*, 400 F.3d at 680.

The ALJ noted that after an exam in 2015, a treating provider noted only tenderness, mild pain with motion, and stiffness in the lumbar spine despite Plaintiff's report that his pain was 'worse." Tr. 23, 529. Other providers documented few physical findings upon examination even when Plaintiff complained of back pain. Tr. 23-24, 799-800, 807, 823. The ALJ observed that even when some pain and increased muscle rigidity was noted in the lumbar spine, Plaintiff still had 5/5 muscle strength with extension and flexion. Tr. 24, 815. Additionally, the ALJ noted that the more significant findings in the record were related to specific activities which aggravated Plaintiff's back and are not

representative of Plaintiff's overall functioning.  Tr. 24, 438 (new back pain from "moving a dryer around"), 510 (was carrying a television and twisted his back), 552 (was carrying a television and strained his back), 802 (lifting "something heavy" and back popped).

Plaintiff contends the ALJ overstated the significance of frequent findings that Plaintiff was in "no acute distress" or "NAD."  ECF No. 12 at 14-15; Tr. 24 (citing Tr. 440, 453, 799, 807, 814, 823, 830, 838, 869, 939, 944).  Plaintiff asserts the ALJ's "reliance on a lack of single physical finding" is not convincing evidence to "wholly discredit" Plaintiff.  ECF No. 12 at 15.  As discussed *supra*, the ALJ considered more than the "no acute distress" findings in evaluating the objective evidence.  Furthermore, the ALJ's point was that in light of Plaintiff's allegations of "severe and constant pain," it would be reasonable to expect observations of discomfort or pain behavior by treating providers.  Tr. 24.  The ALJ found that "[t]he absence of such observations is inconsistent with the claimant's allegations of severely limiting pain and constant symptoms."  Tr. 24.  Additionally, the ALJ noted the record includes some findings that Plaintiff presented as uncomfortable or in mild distress but observed that many such notations were made when Plaintiff reported ongoing amphetamine dependence and was not complaining of significant musculoskeletal problems.  Tr. 24 (citing Tr. 458, 461, 469, 472).  This is a reasonable interpretation of the record.

Fourth, the ALJ found that treatment notes indicating minimal psychiatric observations are inconsistent with the allegations of severely limiting mental health symptoms. Tr. 24. Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir.1995). The ALJ made numerous observations supporting this conclusion: (1) during many exams Plaintiff's presentation did not include signs of anxiety or other mental health symptoms (citing Tr. 456, 477, 544, 630); (2) although Plaintiff has been observed to be anxious or depressed during some appointments, he demonstrated no agitation or pressured speech (citing Tr. 451, 467, 473, 753, 800); (3) observations of some psychiatric abnormalities were made when Plaintiff was engaged in drug abuse and were not reliable indicators of Plaintiff's baseline for mental health symptoms (citing Tr. 461, 495); (4) although Plaintiff presented as anxious, Dr. Sawyer found Plaintiff was overstating his symptoms, had good attention span and concentration, and had minimal difficulty with memory (citing Tr. 539-40); and (5) even when Plaintiff presented as anxious, irritable, or dysphoric, his attention and concentration were normal (citing Tr. 467, 534, 544, 800, 883). Tr. 24. The ALJ also observed that one provider noted Plaintiff presented with no anxiety in an "extremely full and quite busy" waiting room. Tr. 24, 518, 632; *see also* Tr. 708.

1   Plaintiff contends the ALJ engaged in "selective citation" of less significant

2   findings not representative of the complete record.  ECF No. 12 at 14.  To the

3   contrary, the ALJ addressed less significant findings as well as records indicating

4   more significant symptoms, and noted factors supporting the ALJ's overall

5   conclusions.  The ALJ's conclusions are based on a reasonable interpretation of the

6   evidence.  The Court must uphold the ALJ=s decision where the evidence is

7   susceptible to more than one rational interpretation.  *Magallanes v. Bowen*, 881

8   F.2d 747, 750 (9th Cir. 1989).

9   Plaintiff also contends the ALJ incorrectly stated that Dr. Sawyer's more

10   significant findings were inconsistent with his engagement with treatment

11   providers, such as unusual eye contact.  ECF No. 12 at 16.  Medication

12   management records from Shane Anderson, Pharm.D., often indicate Plaintiff's

13   eye contact was "generally poor," but as noted by the ALJ, also found no

14   observable signs of severe anxiety despite sitting in a crowded waiting room.   Tr.

15   518, 630, 632, 638, 645, 665, 674, 708.  To the extent the ALJ erred by suggesting

16   that there are no findings of unusual eye contact outside of Dr. Sawyer's report, the

17   error is harmless.  As long as there is substantial evidence supporting the ALJ's

18   decision and the error does not affect the ultimate nondisability determination, the

19   error is harmless.  *See Carmickle*, 533 F.3d at 1162.  Nothing in the record

20   indicates that poor eye contact is a significant functional limitation not accounted

21   for by the mental limitations in the RFC.  The ALJ cited numerous other factors

based on a reasonable interpretation of the evidence which support the conclusion that Plaintiff's mental health allegations are not supported by the record.

Fifth, the ALJ found that Plaintiff's activities are inconsistent with his allegations of severely limiting symptoms. Tr. 25. It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in assessing a claimant's symptom complaints. *See Rollins*, 261 F.3d at 857. However, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). Notwithstanding, if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain. *Fair,* 885 F.2d at 603. Furthermore, "[e]ven where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

The ALJ noted Plaintiff is able to prepare simple meals, perform some household chores, go grocery shopping, spend time with his girlfriend, talk to family members occasionally, and spent time working in his garden. Tr. 25 (citing Tr. 316-23, 659, 720, 746). The ALJ did not explain how these activities are inconsistent with Plaintiff's allegations, nor are these activities particularly

suggestive of significant functional abilities on their face.  However, the ALJ cited

other clear and convincing reasons supported by substantial evidence, so the failure

to adequately support this reason is harmless.  *See Carmickle*, 533 F.3d at 1162.

Sixth, the ALJ found that Plaintiff's minimal and conservative treatment is

inconsistent with allegations of extremely limiting pain.  Tr. 25.  The type, dosage,

effectiveness and side effects of medication taken to alleviate pain or other

symptoms and any other treatment received for relief of pain or symptoms are

relevant factors in evaluating the intensity and persistence of symptoms.  20 C.F.R.

§§ 404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v).  Further, "evidence of

'conservative treatment' is sufficient to discount a claimant's testimony regarding

severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007)

(finding); *see also Meanel v. Apfel,* 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting

subjective pain complaints where petitioner's "claim that she experienced pain

approaching the highest level imaginable was inconsistent with the 'minimal,

conservative treatment' that she received").  The ALJ found Plaintiff was offered

only minimal and conservative treatment for his allegations of extremely limiting

physical pain.  Tr. 25.  For example, the ALJ noted that in December 2014,

Plaintiff was prescribed only gabapentin and was advised to try stretching, ice, and

heat for his back pain, and the same treatment continued in August 2015.  Tr. 25,

437, 839.  The ALJ's conclusion is based on a reasonable interpretation of the

evidence and this is a clear and convincing reason supported by substantial evidence.

**C.     Medical Opinion Evidence**

Plaintiff contends the ALJ failed to properly consider the opinions of treating physician Steven Foster, D.O.; examining psychiatrist Greg Sawyer, M.D., Ph.D.; examining psychologist Aaron R. Burdge, Ph.D.; and examining psychologist David Monson, Ph.D.  ECF No. 12 at 16-21.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)."  *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Id*.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  "However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

### 1. Steven Foster, D.O.

Dr. Foster completed a "Medical Report" form in August 2016 and listed chronic low back pain as Plaintiff's only diagnosis. Tr. 557-59. He found that Plaintiff needs to lie down four to five times per day due to pain for ten to 15 minutes at a time. Tr. 557. When asked if work on a regular and continuous basis would cause Plaintiff's condition to deteriorate, Dr. Foster responded "unknown – we are still in the preliminary stages of diagnosis." Tr. 558. Dr. Foster indicated Plaintiff would miss four or more days of work per month because, "[Patient] reports having [increased] pain several days per week that would cause him to miss work." Tr. 558. He opined that Plaintiff could perform sedentary work. Tr. 558.

The ALJ gave little weight to Dr. Foster' s opinion. Tr. 26. Because Dr. Foster's opinion was contradicted by the opinion of Drew Stevick, M.D., Tr. 170-71, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Foster's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Stevick did not rely on objective findings in assessing limitations, but on Plaintiff's unreliable subjective statements. Tr. 26. A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Fair*, 885 F.2d at 604. The ALJ observed Dr. Foster indicated he was unsure whether work would cause Plaintiff's condition to deteriorate because he was "still in the preliminary stages of diagnosis." Tr. 26, 558. When asked whether Plaintiff had any physical or mental condition which was reasonably likely to cause pain, Dr. Foster checked "No." Tr. 557. Additionally, the ALJ noted Dr. Foster stated that he relied on Plaintiff's subjective statements in finding that Plaintiff would be absent from work for four or more days of work per month. Tr. 26, 558. Based on these findings, the ALJ reasonably concluded Dr. Foster primarily relied on Plaintiff's subjective statements which the ALJ determined were unreliable.

Plaintiff first contends that Dr. Foster's opinion about absenteeism is uncontradicted and that the opinion must therefore be rejected with clear and convincing reasons rather than specific and legitimate reasons. ECF No. 12 at 17. Plaintiff argues that "assuming *arguendo* that Dr. Foster's opinion was reached based on subjective allegations, it was nevertheless independently supported by all other examining opinions." ECF No. 12 at 17 (citing Tr. 542, 881). However,

there is no ambiguity regarding Dr. Foster's opinion that Plaintiff would miss work four times per month was based on subjective allegations since Dr. Foster stated that it was based on Plaintiff's self-report. Tr. 558. The ALJ's reason for rejecting this limitation is clearly and convincingly supported by the record, even if Plaintiff is correct in asserting that the opinion is uncontradicted.

Plaintiff cites the opinions of Greg D. Sawyer, M.D., Ph.D., and Aaron R. Burdge, Ph.D., to show that "all other examining opinions" support Dr. Foster's assessment because each found an impairment in Plaintiff's ability to complete a workday or work week and maintain attendance. ECF No. 12 at 17 (citing Tr. 542, 881). However, as noted by Defendant, Dr. Sawyer and Dr. Burdge assessed limitations based on mental health symptoms, not for physical reasons, and neither Dr. Sawyer nor Dr. Burdge opined that Plaintiff would miss four or more days of work per month. ECF No. 18 at 13-14. In fact, contrary to Plaintiff's assertion, Dr. Burdge opined that Plaintiff would have only mild or no limitations in the ability to maintain regular work attendance. Tr. 881. These opinions do not reasonably support Dr. Foster's conclusion that Plaintiff would miss four or more days of work per month. Additionally, the ALJ reasonably rejected these opinions, discussed *infra*.

Plaintiff next argues that even if the ALJ found Plaintiff's self-report is unreliable, Dr. Foster's opinion was not based on Plaintiff's self-report. ECF No. 12 at 18. When an opinion is not more heavily based on a patient's self-reports

than on clinical observations, there is no evidentiary basis for rejecting the opinion. *Ghanim*, 763 F.3d at 1162; *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008). Plaintiff does not demonstrate how Dr. Foster's opinion is based more heavily on clinical observations. ECF No. 12 at 17-18. As discussed *supra*, the ALJ's finding that Dr. Foster's opinion is largely based on Plaintiff's self-report is supported by the record. This is a specific, legitimate reason supported by substantial evidence.

Second, the ALJ found Dr. Foster's opinion is inconsistent with the medical evidence. An ALJ may discredit treating physicians' opinions that are unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The ALJ noted minimal physical exam findings and the lack of observations indicating Plaintiff presented in any notable discomfort or pain during the relevant period, discussed *supra*. Tr. 26. Plaintiff contends that an office visit note indicating "extensive muscle rigidity" by Dr. Foster on the same date he completed the medical report form supports the assessed limitations. ECF No. 12 at 18 (citing Tr. 815). Dr. Foster's note from August 2016 does not document "extensive" muscle rigidity but states, "[p]ain on palpation of the lumbar spine with increased muscle rigidity bilaterally from L2 to the sacral base. There is pain on ROM [range of motion] and MS [muscle strength] testing of the left hip, but MS 5/5 with extension and flexion." Tr. 815. Plaintiff's gait, cervical spine, thoracic spine, right hip, and both knees and ankles were normal.

Tr. 815. The ALJ noted this record and observed that even though some pain and increased muscle rigidity was found in the lumbar spine, Plaintiff still had 5/5 muscle strength with extension and flexion, suggesting relatively mild overall findings. Tr. 23-24, 815. Based on the foregoing, it was reasonable for the ALJ to conclude that Dr. Foster's opinion is not consistent with the medical evidence and this is a specific, legitimate reason supported by substantial evidence.

2. *Gregory Sawyer, M.D, Ph.D.*

Dr. Sawyer completed a psychiatric evaluation in March 2015 and diagnosed social anxiety disorder and major depression episode in partial remission because of medication. Tr. 535-42. He indicated that Plaintiff "appears to somewhat overstate his symptomatology" and "may be exaggerating some of his symptoms or his history in order to be able to fulfill a criteria for a diagnosis," although he noted Plaintiff does have significant symptoms. Tr. 539, 541. Functionally, Dr. Sawyer opined that Plaintiff would not have difficulty performing simple, repetitive tasks or detailed and complex tasks; will have difficulty understanding, carrying out, and remembering complex and one- or two-step instructions; will not have difficulty maintaining effective social interactions on a consistent and independent basis with supervisors, coworkers and the public; will have difficulty performing work activities on a consistent basis without special or additional instructions; will have difficulty sustaining concentration and persisting in work-related activity at a reasonable pace; will have difficulty maintaining regular attendance and completing

a normal workday or workweek without interruptions; and will have difficulty dealing with the usual stresses encountered in the workplace. Tr. 541-42.

The ALJ gave significant weight to Dr. Sawyer's findings that Plaintiff presented as rather sophisticated, appeared to be seeking a psychiatric diagnosis, and appeared to overstate his symptoms. Tr. 27. The ALJ gave weight to Dr. Sawyer's opinion that Plaintiff can perform simple and repetitive tasks. Tr. 27. However, the ALJ gave little weight to the rest of Dr. Sawyer's functional assessment. Tr. 27. Because Dr. Sawyer's opinion was contradicted by the opinions of Renee Eisenhauer, Ph.D., Tr. 142-44, and Edward Beaty, Ph.D., Tr.173-76, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Sawyer's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found that many of the limitations assessed by Dr. Sawyer are based on Plaintiff's "description of history" and are therefore unreliable. Tr. 27. If a treating provider's opinions are based "to a large extent" on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion. *Ghanim*, 763 F.3d at 1162 (citing *Tonapetyan*, 242 F.3d at 1149). Indeed, Dr. Sawyer generally indicated Plaintiff "will have difficulty based on his description of his history." Tr. 541. He further specifically noted that Plaintiff's self-report is the basis for the finding that Plaintiff will have difficulty understanding, remembering and carrying out complex and one or two-step instructions, and performing working activities on a consistent basis

without special or additional instructions.  Tr. 541-42.  This is a specific, legitimate reason for rejecting these limitations.

Second, the ALJ found that the remaining limitations assessed by Dr. Sawyer are not sufficiently specific.  Tr. 27.  An ALJ may reject an opinion that does "not show how [the claimant's] symptoms translate into specific functional deficits which preclude work activity."  *See Morgan,* 169 F.3d at 601.  The ALJ observed that Dr. Sawyer suggested that Plaintiff "will have difficulty" in several areas but did not describe the extent of the difficulty or identify the basis or support for those findings.  Tr. 27.  The ALJ also noted that Dr. Sawyer did not opine that Plaintiff was unable to perform any of the evaluated workplace activities.  Tr. 27.  Thus, the ALJ concluded that Dr. Sawyer's opinion is not inconsistent with the RFC finding. Tr. 27.

Plaintiff contends Dr. Sawyer's unquantified assessment that he "will have difficulty" means "it would be impossible for the ALJ to conclude all limitations were accounted for" in the RFC.  ECF No. 12 at 19.  Plaintiff notes the vocational expert testified that "even a moderate impairment" in the ability to maintain attendance would be "work-preclusive."  ECF No. 12 at 19.  However, the ALJ's point is that there is no basis in Dr. Sawyer's opinion to conclude that "will have difficulty" translates to a moderate or any other specific level of impairment.  The vocational expert testified that an average employer will tolerate up an employee being off task up to ten percent of the day on an ongoing basis and up to six

unscheduled absences per year. Tr. 110. Thus, "will have difficulty" is not necessarily inconsistent with customary tolerances of attendance and completing a workday. It is the ALJ's duty to resolve conflicts and ambiguity in the medical and non-medical evidence. *See Morgan*, 169 F.3d at 599-600. In light of the ALJ's other findings regarding Dr. Sawyer's opinion, it was reasonable for the ALJ to conclude that the limitations assessed by Dr. Sawyer are not inconsistent with the RFC. This is a specific, legitimate reason supported by substantial evidence.

  *3. Aaron R. Burdge, Ph.D.*

  Dr. Burdge completed a DSHS Psychological/Psychiatric Evaluation form in July 2012 and diagnosed major depressive disorder, anxiety disorder, and personality disorder with antisocial and borderline features. Tr. 879-83. He assessed no or mild limitations in ten functional areas and moderate limitations in the abilities to compete a normal workday and work week without interruptions from psychologically based symptoms; maintain appropriate behavior in a work setting; and set realistic goals and plan independently. Tr. 881. Dr. Burdge opined the current limitations were primarily the result of alcohol or drug use in the preceding 60 days but that his current limitations would persist after 60 days of sobriety. Tr. 882.

  The ALJ gave partial weight to Dr. Burdge's opinion. Tr. 27. Because Dr. Burdge's opinion was partially contradicted by the opinions of Renee Eisenhauer, Ph.D., Tr. 142-44, and Edward Beaty, Ph.D., Tr.173-76, the ALJ was required to

provide specific and legitimate reasons for rejecting a portion of Dr. Burdge's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found that the limitations assessed by Dr. Burdge "do not suggest any greater degree of difficulty than I have accounted for in the above residual functional capacity." Tr. 27. While the RFC finding includes some mental limitations which would reasonably account for limitations on maintaining appropriate behavior in the workplace and setting goals, it does not appear to account for a moderate limitation in the ability to complete a normal workday or work week without interruptions from psychologically based symptoms. Tr. 21. Dr. Burdge's opinion is distinguishable from Dr. Sawyer's opinion because Dr. Burdge quantified the limitation in this area as moderate, defined as a "significant limitation." Tr. 881. The vocational expert testified that a person who is off task for more than 10 percent of the workday would likely be terminated. Tr. 110. Defendant contends that the RFC limitations of simple instructions, work which requires little or no judgment to do simple duties, and social limitations reasonably accommodate the depression, anxiety, and antisocial features identified by Dr. Burdge. ECF No. 18 at 18-19. However, Defendant identifies no basis in the record supporting the conclusion that the moderate limitation on the ability to complete a workday or work week assessed by Dr. Burdge translates to the RFC limitations mentioned. This finding is not supported by substantial evidence.

Second, the ALJ found Dr. Burdge's opinion does not include sufficient support or basis for the limitations assessed. Tr. 27. A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957. The ALJ noted Dr. Burdge did not review any treatment records and reviewed only one other opinion, a 2009 DSHS evaluation. Tr. 27, 879. Plaintiff contends that Dr. Burdge's opinion is supported by objective testing such as Trails A&B, HAM, and PAI testing, plus a mental status exam. ECF No. 12 at 20, Tr. 880, 882-97. However, Dr. Burdge's opinion does not explain how the results from those tests lead to the conclusion that Plaintiff has a moderate limitation in the ability to complete a normal workday or work week. Trails A test results were normal and Trails B indicated mild to moderate impairment in visual-spatial ability, visual motor speed, coordination, and switching between targets. Tr. 880. The results of HAM testing showed severe depression and moderate anxiety, which the ALJ found were severe impairments. Tr. 880. Negative mental status exam findings included lethargy, occasional eye contact, mood was dysphoric, irritable, anxious and afraid, and affect was congruent and blunted, but findings were normal for appearance, speech, though process and content, orientation, perception, memory, fund of knowledge, concentration, abstract thinking, and insight and judgment. Tr. 882-83. The ALJ noted that even though Dr. Burdge found Plaintiff to be anxious, irritable, and dysphoric, he also documented normal attention span and

concentration. Tr. 24-25, 883. Based on the foregoing, the ALJ reasonably determined that Dr. Burdge's opinion does not adequately support the moderate limitations assessed.

### 4. David Monson, Ph.D.

Dr. Monson completed a DSHS Psychological/Psychiatric Evaluation in July 2007 and diagnosed major depressive disorder and generalized anxiety disorder. Tr. 875-77. He indicated Plaintiff experienced severe symptoms of depressed mood and verbal expression of anxiety or fear, and his global illness was severe. Tr. 876. He opined that Plaintiff has marked limitations in the ability to understand, remember and follow complex instructions and in the ability to interact appropriately with the public, and severe limitations in the ability to relate appropriately to co-workers and supervisors and in the ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. Tr. 877. Dr. Monson expected that Plaintiff would experience these symptoms and limitations for the rest of his life. Tr. 878.

The ALJ gave no weight to Dr. Monson's opinion. Because Dr. Monson's opinion was contradicted by the opinions of Renee Eisenhauer, Ph.D., Tr. 142-44, and Edward Beaty, Ph.D., Tr.173-76, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Monson's opinion. *Bayliss*, 427 F.3d at 1216.

The ALJ found that Dr. Monson's opinion was made well before the relevant period. Tr. 27. "Medical opinions that predate the alleged onset of

disability are of limited relevance." *Carmickle*, 533 F.3d at 1165; *see also Turner v. Comm'r of Soc. Sec. Admin.,* 613 F.3d 1217, 1224 (9th Cir. 2010) (indicating a statement of disability made outside the relevant time period may be disregarded). The ALJ observed that Dr. Monson's 2007 opinion predates Plaintiff's alleged onset date in this matter by a number of years, and that Dr. Monson's opinion fell within the period considered in Plaintiff's prior decision. Tr. 27.

Plaintiff contends the ALJ erred because Dr. Monson opined that Plaintiff's condition was "lifelong," implying that the opinion controls for the rest of Plaintiff's life. ECF No. 12 at 20, Tr. 878. However, as discussed *supra*, the prior decision found Plaintiff was disabled from November 18, 2008 through September 8, 2010, that medical improvement occurred, and that Plaintiff was not disabled as of September 9, 2010. Thus, there is a final adjudication after the date of Dr. Monson's opinion determining that Plaintiff is not disabled. Therefore, Dr. Monson's opinion is not relevant to a claim period that begins after the nondisability determination.

Plaintiff also contends that the ALJ erred by stating Dr. Monson's opinion fell within the period covered by the prior ALJ decision. ECF No.12 at 20. The prior ALJ decision found Plaintiff disabled from November 18, 2008 through September 8, 2010, and therefore Dr. Monson's opinion predated the period covered by that decision. Tr. 129. The prior decision also reopened previous applications filed on July 31, 2007 and December 9, 2007. Tr. 121. Although Dr.

Monson's opinion does not technically fall into the determination period of the prior decision, the ALJ's error is minor and has no impact on the relevance of Dr. Monson's opinion to the current claim.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly,

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** September 6, 2019.

_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
United States District Judge